UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

JASON BERGIN,

        Plaintiff,

v.                        Case No. 2:13-CV-244-FtM-29CM
                         Case No.  2:09-CR-75-FTM-29SPC
UNITED STATES OF AMERICA,

        Defendant.

_____

## OPINION AND ORDER

This matter comes before the Court on petitioner's Motion Under 28 U.S.C. Section 2255 to Vacate, Set Aside or Correct Sentence by a Person in Federal Custody (Cv. Doc. #1; Cr. Doc. #498)[1] and petitioner's supporting memorandum (Cv. Doc. #2; Cr. Doc. #499), both filed on March 29, 2013.  The government filed a Response in Opposition (Cv. Doc. #7) on May 22, 2013, and petitioner filed a Reply (Cv. Doc. #11) on September 12, 2013. The Court granted petitioner's Motion to add a new argument to one of the issues (Cv. Doc. #13), and the government filed a supplemental Response in Opposition (Cv. Doc. #15) on December 4, 2013.  Petitioner filed a Reply (Cv. Doc. #16) on December 19,

_____

[1] The Court will make references to the dockets in the instant action and in the related criminal case throughout this opinion. The Court will refer to the docket of the civil habeas case as "Cv. Doc.", and will refer to the docket of the underlying criminal case as "Cr. Doc."

2013.  For the reasons set forth below, the motion is dismissed in part and denied in part.

## I.

On September 16, 2009, a federal grand jury in Fort Myers, Florida returned a two-count Indictment (Cr. Doc. #3) charging Jason Bergin and others with Conspiracy to Possess with Intent to Distribute Oxycodone, Methadone, and Alprazolam on and between January, 2008 and July 28, 2009 (Count One) and Possession with Intent to Distribute Oxycodone and Methadone on or about July 28, 2009 (Count Two).  Petitioner filed a Motion to Suppress Evidence (Cr. Doc. #92), and after a hearing, the Magistrate Judge issued a Report and Recommendation (Cr. Doc. #205) recommending denial. On August 6, 2010, after review of objections filed, the undersigned issued a 54-page Opinion and Order (Cr. Doc. #300) adopting in part and rejecting in part the Report and Recommendation and suppressed certain testimony.

Petitioner waived his right to a jury trial (Cr. Doc. #360) and filed a Stipulation (Cr. Doc. #376) of facts.  The undersigned found petitioner guilty of Count One on December 10, 2010, at a bench trial based upon the stipulated facts, and the government dismissed Count Two.  (Cr. Docs. ## 399, 430.)  On March 7, 2011, the Court sentenced petitioner to a term of imprisonment of 180 months, followed by a term of three years supervised release. Judgment was entered the following day.  (Cr. Doc. #433.)

Petitioner appealed, arguing the Court erred when it denied his pretrial motion to suppress evidence.  The Eleventh Circuit Court of Appeals affirmed petitioner's conviction on January 12, 2012 (Cr. Doc. #484); United States v. Bergin, 455 F. App'x 908 (11th Cir. 2012).  After a petition for certiorari was denied by the United States Supreme Court on April 16, 2012, Bergin v. United States, 132 S. Ct. 1948 (2012), petitioner filed this timely § 2255 motion.

## II.

Petitioner raises the following claims in his § 2255 motions: (1) the sentencing court improperly considered a state court conviction for domestic violence for which petitioner has filed a timely post-conviction motion; (2) the sentencing court improperly considered a state court conviction for gaming for which petitioner has filed a timely post-conviction motion; (3) petitioner received ineffective assistance of counsel because his attorney failed to object to the drug weight relied upon by the court in determining a base offense level of 34; (4) petitioner received ineffective assistance of counsel because his attorney failed to object to the use of his gambling conviction in the computation of petitioner's criminal history; (5) petitioner received ineffective assistance of counsel because his attorney failed to seek a downward departure based on petitioner's diminished capacity; and (6) petitioner received ineffective assistance of counsel because his attorney

failed to seek a downward departure based on United States Sentencing Manual (U.S.S.G.) Sections 5G1.3 and 5K2.23.

**A. Grounds One and Two**

Petitioner asserts that his sentence was improper because the sentencing court considered a state court conviction for domestic violence for which petitioner has filed a timely post-conviction motion.  Petitioner's Reply states that he is not actually raising this as an issue, but simply providing the court with notice that he will seek resentencing if his domestic violence conviction is vacated.  (Cv. Doc. #11, p. 4.)  Petitioner asserts that under Johnson v. United States, 544 U.S. 295 (2005) he will be entitled to re-sentencing if the state court conviction is vacated.  In Johnson, the Supreme Court held that the state court vacatur of a predicate conviction is a new "fact" that forms the basis of a challenge under 28 U.S.C. § 2255 and triggers a fresh one-year statute of limitations under § 2255(f)(4), so long as the petitioner exercised due diligence in seeking that order. Since there is no claim actually being asserted, Ground One will be dismissed.

Similarly, petitioner asserts that his sentence was improper because the sentencing court considered a state court conviction for gaming for which petitioner has filed a timely post-conviction motion.  Again, petitioner does not assert that the gaming conviction has been vacated, only that re-sentencing will be

appropriate if that occurs.  Petitioner's Reply states that he is not actually raising this as an issue, but simply providing the court with notice that he will seek resentencing if his gaming conviction is vacated.  (Cv. Doc. #11, p. 4.)  Since there is no claim being asserted, Ground Two is dismissed.

**B. Evidentiary Hearing**

A district court shall hold an evidentiary hearing on a habeas petition "unless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief. . . ."  28 U.S.C. § 2255(b).  "[I]f the petitioner alleges facts that, if true, would entitle him to relief, then the district court should order an evidentiary hearing and rule on the merits of his claim."  Aron v. United States, 291 F.3d 708, 714-15 (11th Cir. 2002) (internal quotation marks and citation omitted).  However, a "district court is not required to hold an evidentiary hearing where the petitioner's allegations are affirmatively contradicted by the record, or the claims are patently frivolous."  Id. at 715; see also Gordon v. United States, 518 F.3d 1291, 1301 (11th Cir. 2008).  Here, even when the facts are viewed in the light most favorable to petitioner, the record establishes that petitioner received effective assistance of counsel in this case and no legal error was committed.  Therefore, the Court finds that an evidentiary hearing is not warranted in this case.

**C. Ineffective Assistance of Counsel Principles**

The legal standard for ineffective assistance of counsel claims in a habeas proceeding is well established.  To prevail on a claim of ineffective assistance of counsel, a habeas petitioner must demonstrate both that (1) counsel's performance was deficient because it fell below an objective standard of reasonableness, and (2) prejudice resulted because there is a reasonable probability that, but for the deficient performance, the result of the proceeding would have been different.  Hinton v. Alabama, 134 S. Ct. 1081, 1087-88 (2014) (citing Strickland v. Washington, 466 U.S. 668, 687, 694 (1984); Padilla v. Kentucky, 559 U.S. 356, 366 (2010)).

The proper measure of attorney performance is simply reasonableness under prevailing professional norms considering all the circumstances.  Id. at 1088.  A court must "judge the reasonableness of counsel's conduct on the facts of the particular case, viewed as of the time of counsel's conduct."  Roe v. Flores-Ortega, 528 U.S. 470, 477 (2000) (quoting Strickland, 466 U.S. at 690).  This judicial scrutiny is highly deferential, and the Court adheres to a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.  Strickland, 466 U.S. at 689-90.  To be objectively unreasonable, the performance must be such that no competent counsel would have taken the action.  Rose v. McNeal, 634 F.3d 1224, 1241 (11th Cir. 2011);

Hall v. Thomas, 611 F.3d 1259, 1290 (11th Cir. 2010). Additionally, an attorney is not ineffective for failing to raise or preserve a meritless issue.   Ladd v. Jones, 864 F.2d 108, 109-10 (11th Cir. 1989); United States v. Winfield, 960 F.2d 970, 974 (11th Cir. 1992).

To establish prejudice under Strickland, petitioner must show more than that the error had "some conceivable effect on the outcome of the proceeding."   Marquard v. Sec'y for the Dep't of Corr., 429 F.3d 1278, 1305 (11th Cir. 2005) (quotation marks omitted).   Rather, the petitioner must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. Hinton, 134 S. Ct. at 1089.   "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. (quoting Strickland, 466 U.S. at 694) (internal quotation marks and citations omitted).

**D. Specific Claims:**

**(1)   Ground Three:** Petitioner asserts that he received ineffective assistance of counsel because his attorney failed to object to the weight of the drugs relied on by the sentencing court in determining a base offense level of 34.   The Presentence Report found petitioner was responsible for the equivalent of 7,149.82 kilograms of marijuana, which resulted in a base offense level of 34.   Petitioner argues that a large part of this drug amount was

attributable to conduct which pre-dated the charged conspiracy dates of January, 2008 through July 28, 2009, and these pre-conspiracy transactions should not have been used to compute the drug weight attributed to petitioner.  Petitioner also asserts that he was incarcerated for approximately six months during the conspiracy, but notwithstanding his inability to participate in the conspiracy during this time his attorney failed to seek a reduction of the drug weight for that period.  These failures, petitioner asserts, constituted ineffective assistance of counsel.

A member of a drug conspiracy is liable for his own acts and the acts of others in furtherance of the activity that he agreed to undertake and that are reasonably foreseeable in connection with that activity. United States v. Ismond, 993 F.2d 1498, 1499 (11th Cir. 1993).  When calculating drug quantities, if the amount seized does not reflect the entirety of the offense, the sentencing court must find the total drug quantity by estimating. United States v. Frazier, 89 F.3d 1501, 1506 (11th Cir. 1996); United States v. Duncan, 400 F.3d 1297, 1304 (11th Cir. 2005).  The court's approximation may not be "merely speculative," but must be a "fair, accurate, and conservative estimate[ ]" of the quantity based on evidence presented at trial, at the sentencing hearing, or included as undisputed facts in the presentence investigation report. United States v. Zapata, 139 F.3d 1355, 1359 (11th Cir. 1998).

"To determine the quantity of drugs attributable to a defendant for sentencing purposes, the district court must first make individualized findings concerning the scope of criminal activity undertaken by the defendant." United States v. Bush, 28 F.3d 1084, 1087 (11th Cir. 1994). This requires a determination as to "the scope of the specific conduct and objectives embraced by the defendant's agreement" to participate in the scheme. U.S.S.G. § 1B1.3 cmt. n.2 (2010). "The court is then to determine the quantity of drugs reasonably foreseeable in connection with that level of participation." Id. A defendant is only accountable for co-conspirator conduct that was reasonably foreseeable and within the scope of the criminal activity that the defendants agreed to undertake. United States v. Westry, 524 F.3d 1198, 1219 (11th Cir. 2008).

Count One of the Indictment alleged the conspiracy was "[f]rom on or between January, 2008 and July 28, 2009". (Cr. Doc. #3.) Petitioner filed a trial Stipulation (Cr. Doc. #376) which, as he acknowledged in open court, he had read and signed after discussing its contents with his attorney, and understood that he was stipulating to sufficient facts that would allow the Court to find him guilty of Count One. (Cr. Doc. #380, pp. 4-6.) In the Stipulation, petitioner agreed that "[o]n or between January 2007 and July 28, 2009" he conspired to possess with intent to distribute a quantity or substance containing Oxycodone,

Methadone, and Alprazolam, in the Middle District of Florida, in Lee and Collier County." (Cr. Doc. #376, p. 1.) Petitioner stipulated that, beginning in early 2007, he and his wife created fraudulent prescriptions, went to local pharmacies weekly to have them filled, and then sold the pills. Id. Petitioner and his wife devised a plan to use runners to purchase the fraudulent prescriptions in exchange for pills and cash. Petitioner and his wife created the fraudulent prescriptions, provided them to the runners, drove the runners to the pharmacies to have the prescriptions filled, and usually paid for the prescriptions. Id., pp. 1-2. Petitioner and his wife would give the runners about 15% of the pills in exchange for passing the fraudulent prescriptions. The Stipulation estimated petitioner and his wife were able to pass between 50-60 fraudulent prescriptions per month, and that "[t]housands of Oxycodone, Methadone and Alprazolam pills were obtained via fraudulent prescriptions as a result of this conspiracy." Id. at p. 2.

The trial court found beyond a reasonable doubt that petitioner had conspired between January, 2007 and July 28, 2009, to possess with intent to distribute Oxycodone, Methadone, and Alprazolam; that petitioner knew the identity of each substance, and knew that they were being obtained by fraudulent prescriptions; that petitioner knew and agreed to distribute the substances, and provided a portion to each of the runners for the transactions the

runners were involved in; that all of the participants knew the unlawful purpose of the plan and willfully joined in the plan; and that the object of the plan was to obtain possession of the controlled substances with the intent to distribute them. (Cr. Doc. #399.)

Given this record, there was simply no basis for defense counsel to object to the quantity of drugs attributed to petitioner. Petitioner and his wife were the leaders and organizers of the conspiracy, knew the entire scope and the activities of the various runners, were involved in or reasonably foresaw all the transactions, and profited from them. The quantities set forth in the Presentence Report are conservative estimates amply supported by the evidence. (Presentence Report, ¶ 51.)

Pursuant to the Stipulation, the 2007 transactions did not pre-date the conspiracy, but were part of the actual conspiracy which petitioner admitted. In any event, the pre-January 2008, conduct was clearly relevant conduct for which petitioner was properly held accountable. "The Guidelines Manual provides that types and quantities of drugs not specified in the count of the conviction are to be included, as relevant conduct, in determining the offense level if they were part of the same course of conduct or part of a common scheme or plan as the count of conviction." U.S.S.G. § 1B1.3(a)(2), cmt. n.9 (Nov. 2011). We broadly

interpret the provisions of the relevant conduct guideline. United States v. Behr, 93 F.3d 764, 765 (11th Cir. 1996)." United States v. Hung Thien Ly, 543 F. App'x 944, 947-48 (11th Cir. 2013). The 2007 transactions were clearly "part of the same course of conduct or part of a common scheme or plan as the count of conviction", as petitioner's Stipulation verifies.

Petitioner is also incorrect in his asserting that being in jail means a person is not part of the conspiracy and cannot be held accountable for drug transactions during that time period. As the Presentence Report stated, during periods when petitioner was in custody, petitioner's wife carried on their controlled substance scheme. Petitioner did nothing to withdraw from the conspiracy while in jail, and continued with the drug activities after his release. Thus, there was no basis for defense counsel to seek a departure because petitioner had previously been in jail for substantive drug offenses.

Petitioner has shown neither deficient performance by his attorney nor resulting prejudice. Petitioner's claims of ineffective assistance of counsel are without merit as to Ground Three.

**(2) Ground Four:** Petitioner asserts he received ineffective assistance of counsel because his attorney failed to object to the assessment of one criminal history point for his misdemeanor "gaming" conviction in the computation of petitioner's criminal

history.  Petitioner argues that, under U.S.S.G. § 4A1.2(c), any gambling offense, regardless of nomenclature, is never counted. Since petitioner's "gaming" conviction was a "gambling" offense, petitioner asserts he should not have received a criminal history point.  The lack of this point would have resulted in a Criminal History Category of I instead of II, and a Sentencing Guidelines range 20 months lower than that otherwise calculated.  Counsel's failure to object, petitioner asserts, constituted ineffective assistance.

The Sentencing Guidelines provide that, with two exceptions, "[s]entences for misdemeanor and petty offenses are counted" toward a defendant's criminal history score.  U.S.S.G. § 4A1.2(c) (2010).  Under the allegedly relevant exception, certain enumerated offenses and "offenses similar to them" are to be disregarded unless "(A) the sentence was a term of probation of more than one year or a term of imprisonment of at least thirty days, or (B) the prior offense was similar to an instant offense." U.S.S.G. § 4A1.2(c)(1) (2010).  Among those offenses specifically listed in § 4A1.2(c)(1), is the offense of "gambling".  Id. Petitioner contends that his "gaming" conviction is "gambling" or at least an offense similar to gambling, and therefore should not have been counted.

Petitioner is incorrect in asserting that he was convicted of "gaming."  The Presentence Report simply states he was convicted

of a misdemeanor, and there was no issue raised as to what misdemeanor.  As the attached Clark County Court Records establish, the gaming counts were dismissed and petitioner was convicted of the misdemeanor "theft".  See Attached.

It remains to be determined whether this "theft" is sufficiently similar to gambling that it should not have been assessed a criminal history point.  In making this determination, a court is directed to "use a common sense approach that includes consideration of relevant factors such as (i) a comparison of punishments imposed for the listed and unlisted offenses; (ii) the perceived seriousness of the offense as indicated by the level of punishment; (iii) the elements of the offense; (iv) the level of culpability involved; and (v) the degree to which the commission of the offense indicates a likelihood of recurring criminal conduct."  U.S.S.G. § 4A1.2, cmt. n.12 (2010).  This requires the court to consider the facts underlying petitioner's conviction. United States v. Garcia-Sandobal, 703 F.3d 1278 (11th Cir. 2013).

The Presentence Report states that petitioner was charged with several offenses in 2001 in Las Vegas, Nevada.  As relevant to this issue, petitioner was charged with "Conspiracy to Commit Fraudulent Acts – Gaming", and pled guilty on September 9, 2002 to a "misdemeanor, sentenced to credit for jail time served." (Presentence Report, ¶ 62.)  The Presentence Report does not identify the misdemeanor, but states that the Criminal Complaint

in the case stated that petitioner was employed as a Boxman at the Venetian Casino Resort, and conspired with Richard Fisher to commit unlawful gaming acts at the Venetian Casino Resort.  While playing craps, Fisher placed a wager without calling the bet, and after the dice had landed Bergin called the wager consistent with a winning hand.  Bergin was ordered to pay $7,500 restitution as part of his sentence.  (Presentence Report, ¶ 62.)

The facts set forth in the Presentence Report, to which no objection has ever been made, show that the conduct was in fact theft – a scheme to defraud a gambling establishment of money.  This is not similar at all to gambling.  Because petitioner's misdemeanor conviction was neither gambling nor similar to gambling, § 4A1.2(c) does not preclude a criminal history point from being assessed for the conviction.  Therefore, no ineffective assistance of counsel occurred in failing to object to such an assessment.

(3)  **Ground Five:**  Petitioner asserts he received ineffective assistance of counsel because his attorney failed to seek a downward departure based on petitioner's diminished capacity pursuant to U.S.S.G. § 5K2.13.  Petitioner argues that his psychiatric history is set forth in the Presentence Report, and that no competent counsel would have failed to seek a downward departure based upon diminished capacity.  Petitioner further asserts that counsel made no investigation concerning his

diminished capacity and did not seek expert psychiatric assistance.  Petitioner states that he is not arguing that he was incompetent, only that there was a basis for a downward departure motion based upon diminished capacity.

Under U.S.S.G. Section 5K2.13, "[a] downward departure may be warranted if (1) the defendant committed the offense while suffering from a significantly reduced mental capacity; and (2) the significantly reduced mental capacity contributed substantially to the commission of the offense."  U.S.S.G. § 5K2.13 (2010).  The provision continues:  "However, the court may not depart below the applicable guideline range if (1) the significantly reduced mental capacity was caused by the voluntary use of drugs or other intoxicants; (2) the facts and circumstances of the defendant's offense indicate a need to protect the public because the offense involved actual violence or a serious threat of violence; (3) the defendant's criminal history indicates a need to incarcerate the defendant to protect the public; or (4) the defendant has been convicted of an offense under chapter 71, 109A, 110, or 117, of title 18, United States Code."  Id.  The Application Note to Section 5K2.13 provides that for purposes of this policy statement, "[s]ignificantly reduced mental capacity" means "the defendant, although convicted, has a significantly impaired ability to (A) understand the wrongfulness of the behavior comprising the offense or to exercise the power of reason; or (B)

control behavior that the defendant knows is wrongful." U.S.S.G. § 5K2.13 cmt. n.1 (2010).

The Presentence Report states that petitioner reported having attention problems during his early school years, having behavioral problems, and being diagnosed with bipolar disorder as a teenager. Petitioner reported he stopped taking the medication prescribed for him. (Presentence Report, ¶ 83.) Petitioner reported drinking alcohol since the age of twelve, first trying marijuana at age 14, and continuing daily use of marijuana until his arrest in this case. (Id., ¶ 86.) Petitioner reported using cocaine in his teens, and being placed in a drug treatment program by his parents because of drug and behavior problems. (Id.) Petitioner left home at age 18 and lost contact with his family due to his drug use. (Id., ¶ 75.) Petitioner reported using crack cocaine, amphetamine, methamphetamine, heroin, and ecstasy in his thirties. (Id., ¶ 87.) Petitioner reported visiting a hospital emergency room twice for accidental drug overdoses. (Id., ¶ 80.) Petitioner was committed pursuant to the Baker Act for one day in 2004 after he drank too much, and was diagnosed with alcohol abuse and marijuana abuse. (Id., ¶¶ 85, 88.) Petitioner reported he became addicted to various pain killers in 2004, which he used until his withdrawal due to his arrest in this case. (Id., ¶¶ 89-90.) While incarcerated in this case petitioner tested positive for Hepatitis B, but otherwise reported

mostly good health, and received medication for bipolor disorder. (Id., ¶¶ 81-82.)

It is clear that a reasonably competent attorney would not believe petitioner to be entitled to a downward departure due to diminished mental capacity. Nothing suggests petitioner came within the definition of "significantly reduced mental capacity." The record establishes that petitioner understood what he was doing when he committed the instant drug offense, and that he knew it was wrong, and that he had the ability to organize and lead a scheme create and pass fraudulent prescriptions with the help of others. Petitioner's primary issue was his long-standing voluntary drug use, not mental health issues, which is not a basis for a diminished capacity departure. There was no ineffective assistance of counsel in failing to further investigate, obtain an expert, or seek a diminished capacity departure.

**(6) Ground Six:** Petitioner asserts he received ineffective assistance of counsel because his attorney failed to seek a downward departure based on U.S.S.G. § 5G1.3, which allows a court to impose a concurrent sentence with a prior undischarged term of imprisonment. Petitioner asserts that he was serving two concurrent one-year terms in state court on drug convictions which were part of the conspiracy in the federal case. Based on this, petitioner asserts his attorney should have requested a downward departure or adjustment of the sentence, and should have sought

credit for the one year in state custody toward the federal sentence or a reduction because credit was not available. Petitioner also asserts his attorney should have requested a downward departure pursuant to U.S.S.G. § 5K2.23.

Section 5G1.3 of the Sentencing Guidelines provides:

> (a) If the instant offense was committed while the defendant was serving a term of imprisonment (including work release, furlough, or escape status) or after sentencing for, but before commencing service of, such term of imprisonment, the sentence for the instant offense shall be imposed to run consecutively to the undischarged term of imprisonment.
>
> (b) If subsection (a) does not apply, and a term of imprisonment resulted from another offense that is relevant conduct to the instant offense of conviction under the provisions of subsections (a)(1), (a)(2), or (a)(3) of § 1B1.3 (Relevant Conduct) and that was the basis for an increase in the offense level for the instant offense under Chapter Two (Offense Conduct) or Chapter Three (Adjustments), the sentence for the instant offense shall be imposed as follows:
>
>> (1) the court shall adjust the sentence for any period of imprisonment already served on the undischarged term of imprisonment if the court determines that such period of imprisonment will not be credited to the federal sentence by the Bureau of Prisons; and
>>
>> (2) the sentence for the instant offense shall be imposed to run concurrently to the remainder of the undischarged term of imprisonment.
>
> (c) (Policy Statement) In any other case involving an undischarged term of imprisonment, the sentence for the instant offense may be imposed to run concurrently,

> partially concurrently, or consecutively to
> the prior undischarged term of imprisonment to
> achieve a reasonable punishment for the
> instant offense.

U.S.S.G. § 5G1.3 (2010). Section 5K2.23 of the Sentencing

Guidelines provides:

> A downward departure may be appropriate if the
> defendant (1) has completed serving a term of
> imprisonment; and (2) subsection (b) of §
> 5G1.3 (Imposition of a Sentence on a Defendant
> Subject to Undischarged Term of Imprisonment)
> would have provided an adjustment had that
> completed term of imprisonment been
> undischarged at the time of sentencing for the
> instant offense. Any such departure should be
> fashioned to achieve a reasonable punishment
> for the instant offense.

U.S.S.G. § 5K2.23 (2010).

The Presentence Report reflects that petitioner was charged

with seven counts of Obtaining a Controlled Substance by Fraud in

one state court case, and charged with one count of Obtaining a

Controlled Substance by Fraud in a second state case.

(Presentence Report, ¶¶ 65, 66.) Petitioner pled guilty to both

cases on May 13, 2008, and received concurrent probation sentences.

Id. Petitioner was charged with violation of probation in both

cases, and on January 20, 2009 pled guilty and was placed on two

years of drug probation. Petitioner was thereafter again charged

with violation of probation in both cases, and on August 31, 2009,

pled guilty and was sentenced to 364 days in jail concurrent in

both cases. Petitioner was released from jail on November 13,

2009. Id. Petitioner did not receive criminal history points for

either of these sets of convictions because the first case was considered relevant conduct and the second case was part of the offense conduct. Petitioner's federal sentence was imposed on March 8, 2011. (Cr. Doc. #433.)

Neither of these Sentencing Guidelines provisions applied to this case. Section 5G1.3(b) does not apply because, while the two state cases were relevant conduct or part of the instant offense, neither were the basis for an increase in the offense level. No points were added for either set of convictions when the Presentence Report calculated the criminal history. Section 5K2.23 did not apply because §5G1.3(b) would not have provided an adjustment. Therefore, the failure to seek a departure based on these provision did not constitute ineffective assistance of counsel.

Accordingly, it is hereby

**ORDERED AND ADJUDGED:**

1. Petitioner's Motion Under 28 U.S.C. Section 2255 to Vacate, Set Aside or Correct Sentence by a Person in Federal Custody (Cv. Docs. ## 1-2; Cr. Docs. ## 498-499) is **DISMISSED AS TO GROUNDS ONE AND TWO AND DENIED AS TO ALL OTHER GROUNDS.**

2. The Clerk of the Court shall enter judgment accordingly and close the civil file. The Clerk is further directed to place a copy of the civil Judgment in the criminal file.

**IT IS FURTHER ORDERED:**

**A CERTIFICATE OF APPEALABILITY (COA) AND LEAVE TO APPEAL *IN FORMA PAUPERIS* ARE DENIED.**   A prisoner seeking a writ of habeas corpus has no absolute entitlement to appeal a district court's denial of his petition.   28 U.S.C. § 2253(c)(1); Harbison v. Bell, 556 U.S. 180, 183 (2009).   "A [COA] may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right."   28 U.S.C. § 2253(c)(2).   To make such a showing, Petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," Tennard v. Dretke, 542 U.S. 274, 282 (2004), or that "the issues presented were adequate to deserve encouragement to proceed further," Miller-El v. Cockrell, 537 U.S. 322, 336 (2003)(citations and internal quotation marks omitted).   Petitioner has not made the requisite showing in these circumstances.

Finally, because Petitioner is not entitled to a certificate of appealability, he is not entitled to appeal *in forma pauperis*.

**DONE and ORDERED** at Fort Myers, Florida, this   10th   day of October, 2014.

JOHN E. STEELE
UNITED STATES DISTRICT JUDGE

Copies:
Counsel of Record
Petitioner